I would like to start off by focusing on an admission in the defendant's brief that  think is the most important part of the case, and that is the fact that the defendant was not aware of the fact that the defendant was not available to him at the time of the shooting. Well, Mr. Gould, even taking that point, we accept that it's not an actual knowledge standard. It's an imputed knowledge or should have known, a negligent standard. Does it follow, actually, the conclusion you're trying to press in your point that the only thing that's relevant now, if he admits it, sure, he should have seen that that's the end of the case? Yes, Your Honor. In fact, not only did currently one state that, but if you listen to the only answer the defendant has to the fact that once he knew the person was there, in Abraham v. Rosso, which set the totality of the circumstance standard, they were careful to point out. They said, don't read this case for saying that every event is the same. Some events are more important than others, and this is outcome determinative. He had seen the body. As he admitted, Clemson stated at 1061, I guess, of the transcript that had he seen the body, he never would have shot Curley. He said that, and it was uncontradicted. And objectively, reasonable policemen would have looked in the car, and the body was evident there. Yes, and here's what the respondent said in his brief. Faxes to the Camry could not have solved the whole puzzle of the totality of the circumstances, even if knowledge of Bailey's death would have made it unreasonable to later confuse Curley with Bailey. So what the respondent is saying is, you proved A, A precludes B, but I still can prove that B happened. Once he knows, Clemson said, had I seen that body, I would have stopped. I would have stopped. There were hotly contested issues about where that body was, five very hotly contested issues, all answered in our favor. Because two years after this event happened, all of a sudden, Trooper Drayton and Trooper Clem, on the night of the shooting, they said the body was on the front seat of the car. Two years later, the deposition, because they knew there was no excuse for not looking in that window of the Camry, they come in, they said, oh, no, no, we came up afterwards, the body was secreted behind the car, all of which the jury found against them, because the body was in plain view, it was viewable to the toll collector. What happened was, as Clem said, he froze. He charged out of that car, his backup said, I didn't want to run off that fast, it was dangerous, but he wasn't taking cover. He could have been killed. Clem could have been killed by the perpetrator. He just ran right up there, and in Clem's own words, froze. And the one who paid the price for that was Officer Curley. I'm having a little bit of trouble there, still following your line of argument, because it sounds to me like you're doing what Judge Hayden apparently had problems with, and that is conflating the whole case into a single moment. How is it consistent with the Supreme Court's instruction in Saussure that we not engage in 20-20 hindsight to say everything turns on that moment of what, by your own statement here, I take it the plaintiff agrees, was an overwhelmingly adrenaline-charged moment, and say, that's it, you didn't look in the car, you are therefore liable and responsible. It all pins on that second. Well, the jury was charged to take all that into consideration, 20-20 hindsight, they said, even given all that, it wasn't objectively reasonable that he didn't check out the car, and the defendant admitted in the brief, as I read, that had he seen the body, that one event would have been outcome determinative. To give you another example... Why do you like the jury's verdict on that, but you don't like it when the jury says it was objective, it was still, what was it, question two, where they said, hey, we still say it was not objectively unreasonable? No, there were two theories of liability. The record is very clear on this, that we submitted to plaintiff and said, if we win either one question, one or two, we win liability. And the verdict sheet says, if you answer one or two for the plaintiff, go on. The only reason they didn't go into damages was the judge put on question three, which as she admitted, and it's in the record, was supposed to answer the second Saussure question, did he make an honest mistake of law, and that question should never be submitted to the jury. The jury doesn't know what the law is at the time, and as responded, admitted at page 25 of his brief, that wasn't an issue in this case, because there's no law, no case anywhere that says if a police officer knows the only perpetrator is over here, he can still shoot someone there. And in Homeswell, this court said that you have to show that the law is unsettled. They didn't show it was unsettled, because the law, page 25, he said the mistake of law is not an issue. That's the reason question three was put on, and question three, did he make a reasonable mistake of shooting, we pointed out at the trial, is asking the objective reasonableness question again, which the jury is going to think applies to just the second theory of liability, which would make sense, the confrontation. You have two sequential acts, two theories of liability which are sequential acts, Act 1 involved an unreasonable action, you go on to Act 2, but both Act 1 and Act 2 under Saussure have to be considered separately. Is that correct? No, no, what we're saying is that so what Saussure says is you first find what they're an unconstitutional action, and they found it was by finding for us one or two theories of liability. Then you have to decide, well, even if he acted unconstitutionally, did he make a reasonable mistake as to what the law required? But the facts and the circumstances, if one, if the first act was a constitutional violation, it's the circumstances and facts at the time he looked into the car or not. It's not the circumstances and facts at the time he shot his gun. Well, yes, it's at the time he shot his gun, he's impugned with the knowledge that the only person was over there. What would a reasonable policeman have done if he looked in the car and saw the body? Stopped his car and did what he would have done. Yeah, holstered his gun. That's what he said he would have done. So those are the circumstances that you look at under Saussure in deciding if Act 1 is a constitutional violation, right? Correct. And also, the two theories of liability were submitted without objection. In every other case that's ever been reported anywhere, if you win a theory of liability, you win a case. And there was no objection to the two theories of liability. Question 3, which says he was objectively reasonable when he shot his gun, was clearly applying only to question 2nd theory of liability, which we admit we lost. Had it applied to the first theory, it would have been a direct conflict because it would have been unreasonable to say that he should have seen the body in the car. Well, that's what I'm trying to say, is that under Saussure, the first theory, you've got to consider whether it was reasonable as a matter of constitutional law, what a reasonable policeman would have done not to have looked in the car. Correct. That's the issue of law there. You don't need to go on further to question 3. I just want to say the jury judge, the jury charge was told, consider that you don't do 20-20 hindsight, et cetera, et cetera. And the reason that they came up and lied and made up that story about checking out the car, because they knew that it was just incomprehensible. He was standing here, the body was lying right there, but he didn't look in the car window and ended it right there. If he had gotten a call out of his car saying, we caught the perp, go home, and he didn't listen to that because he had his iPod on, that would have been determinative no matter what happened, as Curley 1 stated. Curley 1 didn't say . . . What was Judge Hayden's reasoning? Didn't she look at that verdict sheet and say, look, the plaintiffs say this is absolutely an inconsistent verdict. I look at this sheet and I can see a way in which you can look at the two answers, questions 1 and 2, and have it be not inconsistent. It's our claim it was a totally consistent verdict. If question 3 wasn't on there, and there's no issue that it didn't belong on there, every one of your cases says the second tier question of law doesn't belong on there, then the verdict was totally consistent. Question 1, one theory of liability was answered for us, one against us. We only have to win on one theory of liability. All the interrogatories were consistent with the question, and we're the ones who are arguing for a consistent verdict. Their interpretation, question 3 conflicting with question 1 would make it inconsistent. Ours makes it consistent. So you think it's a . . . you don't see that there's something the jury is communicating in answering question 2 by saying that Trooper Clem acted in an objectively reasonable manner in shooting Curley during the confrontation? I think that's question 3. I'm reading it. Oh, in the confrontation? No, in the confrontation, Judge, as Curley 1 states, those were two separate issues. The second thing, the jury was told, when you consider the confrontation, forget what you decided on question 1 for the moment. Should he have known by just looking at him that he was the perp or was it too dark or whatever, and they decided that against us. But they decided the first theory of liability, which is also . . . each one's outcome determined as every theory of liability is. And we went on the first one. We didn't have to win them both. And then the third question . . . Why is Judge Hayden wrong about that? Because she looked at what you said about alternative theories and rejected it, right? No, she . . . her exact . . . you'll see in the quote we have, she says to the adversary, you have objections to those two theories of liability, don't you? And his exact answer was, this may not be good for public purposes, but no, I don't. So she said, understood. It was accepted on the verdict sheet that if we win either one of them, and the jury, just as we predicted in the record, that they would think that third question was the shooting objective . . . objective reason related only to the second question. Mr. Gold, we'll have you back for rebuttal. Thank you very much. Mr. Kadish. Yes, at the court, please. Jeffrey M. Kadish. I represent the defendant, Apelli Ron Klem. I also want to introduce to the judges, Heidi Rubin Cohn. Without Heidi, I would not have had a brief. Okay, Mr. Kadish, let me get you started off here, since I wasn't able to ask this question to Mr. Gold, but this whole issue about question three, which may be the crux of this case. The court proposed to submit, with your approval, as the record indicates, this question to the jury as question three. And it looks as if, in fact, in your proposed instructions, you suggested that. And both you and the court, and I assume Mr. Gold, assumed that this was a question of law, but really wasn't the question a question of fact. Exactly right, Your Honor. It's perfectly appropriate questions two and three are both questions of fact that the jury had to decide on their basis and their review of the entire facts from the beginning of the chase to the shooting. And clearly, question two is the Fourth Amendment question. Question three is the qualified immunity question. But question one needs a qualified immunity question too, doesn't it? No, I don't believe it does. What would a reasonable officer, well, we have determined that a reasonable officer would have looked into the car and would have seen the body. Well, the jury made that finding. Yeah, that's a factual finding, right? Yes. Okay, so then what does a reasonable officer do? He holsters his gun, doesn't he? No, I don't think so. What does a reasonable officer do when he knows that the perpetrator is lying dead in the car? Your Honor, you're doing it most respectfully. You are reducing the facts. Okay, my question to you is what does a reasonable officer do when he sees the perpetrator lying dead in the car? Judge, you can't answer. Hypothetically, what does a reasonable officer do? I disagree that he should have stopped and holstered his gun. Okay, is that what the reasonable officer would do when he sees the sole perpetrator is lying dead in the car? Judge, no. I disagree with Your Honor most respectfully. What does he do? Judge, you have to look at the entire facts. But we have two theories of liability. Judge, if you'll let me finish most respectfully, please, Your Honor. Let me answer your question, please. You cannot look at that in a vacuum. At almost the simultaneous that he was passing by the cabaret, he sees a toll collector signaling him to the center of the... But he knows the perpetrator is dead. Judge, he's confronting... He knows the sole perpetrator is dead. Once you know that, would any reasonable officer do anything but put his gun in his holster? I disagree. No, he would not do what Your Honor is suggesting because Your Honor is failing to look at the toll collector signaling him. But he knows the perpetrator is dead. Judge, immediately at the same time, he sees an unidentified male who has his gun out. Okay, and it's not the perpetrator. He knows that because he knows the perpetrator is dead. No, number one, it's what he knew or should have known. He should have known the perpetrator was dead. Judge, most respectfully, I disagree with Your Honor's analysis and question. I was on the panel in Curley 1. I understand that. The two areas that dealt on qualified immunity of what a reasonable, objective officer would do, and one of them was would a reasonable, objective officer have looked in the car to see if the perpetrator was dead in there? I think Your Honor is eliminating... And the jury has determined that a reasonable officer would do that. Your Honor is eliminating very, very significant facts and trying to make... But they all... Judge, let me... No, look, you don't interrupt me. I can interrupt you. Okay, I apologize, Your Honor. A reasonable... That is the rule. I'm sorry, I apologize. I'll let you answer eventually. In sequential acts under Saussure, don't we have to consider the circumstances of each of the acts? In the circumstances of the looking in or not looking into the car, we have to determine not only was it unreasonable, but at that time would an objectively reasonable police officer have thought he had to look into that car. And once he looked into that car, he would have seen the sole perpetrator dead in that car and there would be no further need to have his gun pointed at anybody. Now, you may answer that question. I most respectfully disagree, Your Honor. Looking into the Camry is only one of the factors that the jury had to determine. It is not outcome determinative by any stretch of the imagination. And I think, Your Honor, by eliminating... Are you saying that Curry 1 did not think it was outcome determinative? Absolutely not. I was on the panel. I understand that and I disagree. I think, keep in mind, that was addressing whether there were questions of fact. If Your Honor was correct, keep in mind there was a cross motion on behalf of Curley. Why wasn't there a reversal and an order entering judgment on behalf of Curley on that one point? Because we didn't know if he looked into the car, what he would have seen if he looked into the car, or if it was objectively reasonable for him to look in the car or not look in the car. And the jury were given those facts and the issues of fact that concerned us in Curley 1 now have been determined. I appreciate the fact Your Honor sat on the panel, but I think the way this case was tried was appropriate. I do not think looking into the Camry, that in and of itself is not a constitutional violation. The constitutional violation is what took place throughout the circumstances of these events of November 20, 1997. The constitutional violation is the unreasonable seizure being the shooting of Officer Curley. Correct. And would a reasonable police officer have had his gun drawn at the time that Curley was shot? And a reasonable police officer knowing that the perpetrator was already dead would no longer have his gun unholstered. Within seconds reaching the end of the Camry, the following takes place. A toll collector signals him to the center of the plaza. Number two. But he knows the perpetrator's dead. The fact of the matter is he's confronted with an individual who has his gun drawn. What Your Honor is doing is applying 20-20 hindsight most respectfully which the cases say you can't do. Every issue was presented to the jury and the jury made a determination that Clem's conduct was objectively reasonable in terms of the shooting. And even if it was a mistake, it was a reasonable mistake. And most respectfully, Your Honors, if you adopt the reasoning of Curley 1 as applied by Judge Roth, in essence we are second-guessing a trooper who was confronted with an individual that the jury agreed he could not make a determination whether he was wearing civilian clothes or a uniform. But he should have known it wasn't the perpetrator. He should have known it wasn't the perpetrator. A reasonable officer would have known it wasn't the perpetrator. Judge, the jury ruled to the contrary. No, the jury ruled that he should have looked in the car and the body was in plain sight on the car seat. Your Honor, again, questions 2 and 3 were properly on the verdict sheet. They are consistent with the special interrogatories and this verdict can be harmonized. It's perfectly consistent. You stated that in response to my question before you responded to Judge Roth's question that question 3 was a qualified immunity question. Wasn't question 3 really a fact question as to the reasonableness and the question of whether or not there was a constitutional violation? Maybe I think, Your Honor, maybe I'm misconstruing. Question 3 was the factual inquiry upon which qualified immunity would be based and what Judge Hayden appropriately stated could hold the verdict and find in favor of that claim. Can I ask a question? Yes, sir. Okay. I'm sorry. Some of my passion is consistent with this trial. You've been with this case a long time. And I apologize. We understand that. Please don't misconstrue my enthusiasm as disrespect. We do not. The question becomes in reading the various cases on qualified immunity, I would say and I hearken to say that even reading Saussure v. Katz doesn't really illuminate for me what the qualified immunity standard is that we're supposed to follow. In fact, the concurrence in Saussure said virtually the same thing. But here, this whole question which was asked and answered in question 3 goes to whether or not Officer Clem's overall conduct was reasonable. Isn't that what the question was? I think 2 and 3, in essence, kind of have to be read together. I'm not asking about 2. I'm asking about 3. Yes. It was the basic question. Was his conduct reasonable? Yes. I agree with you, Your Honor. But related, I believe, to the qualified immunity. See, this is not the plaintiff continues to talk about a mistake of law. This is a mistaken identity case. This is a mistake. Exactly. It is entirely different than a mistake of law case. You don't argue that. You're arguing it today, but I don't see it in your briefs. No, Your Honor. There was this argument as to whether or not it was permissible to submit this question of law to the jury. That's not what that question was all about. I believe it is the factual inquiry that was necessary for the jury to make, and I think they made it appropriately so. Let me make sure I understand. You're agreeing that from Officer Clement's perspective, question 3 was intended to get at the factual reasonableness of the behavior in the overall context. Yes, Your Honor. All right. Yes, no question about it. And I think my argument is to Your Honors is I think this was a fair and balanced trial. There is no procedural and substantive error. We had a very deliberative jury. They understood the request to charge. They understood the special interrogatories. They understood the verdict sheet, and they answered questions 2 and 3 appropriately in terms of their analysis of the overall facts that taking everything into consideration, Ron Klent's conduct was objectively reasonable, and even if he did make a mistake, that was a reasonable mistake. Well, you heard my question to Mr. Gould. I'll ask it to you as well. Your opponent said, oh, Judge, he did see these as alternative theories of liability. I'm paraphrasing, but that's what I understood the opposing counsel to say. Is that the way the district judge saw it? Were these two alternative theories of liability, each of which were outcome determinative the way? No, Your Honors. All right. No. All right. Well, explain why they're not and why he's mistaken what he says the district judge did or how the district judge viewed it. What do you have in the record that shows that's not how she viewed it? Well, I think if you look to her decision, in essence, she understood that her position always wanted and always was interpreting curling one, that looking into the Camry was not outcome determinative. It was just a factor to consider. I think Judge Hayden clearly understood that the key questions in terms of the Fourth Amendment and the qualified immunity with which she would look at the answers to question two and three and then mold the verdict appropriately. Judge Hayden had absolutely no difficulty. She did not find the verdict inconsistent. She was able to harmonize it, and I think appropriately so. And I think this jury verdict should be sacrosanct. How did she harmonize it? How did she take question one and harmonize it with two and three? Well, because she did not find it outcome determinative.  But the actual constitutional violation revolved around, from the Camry to the shooting, what happened and what was the basis for Trooper Klem's conduct, and what was it based on? The jury found that it was an appropriate basis, that he could believe that he was being signaled by the toll collector, that there was a gun that was being pointed at the direction of the Camry, and most importantly, this was not disputed by anyone, Trooper Klem yelled, drop your gun, drop your gun, drop your gun. And if you focus in on Curley's testimony, he admits on cross that he had that gun, he had two hands around it, he was in a shooting position. He could have made a decision in a second or two. So the issue is, when being confronted with that, whether it was the perpetrator or not, he was confronted with someone with a weapon, who the jury agreed could not determine the clothing, but unquestionably there were a weapon pointed at him in the general direction of the Camry. That's the issue of the constitutional violation and the issue of the reasonableness of what he did, and it qualified a beauty if there was a mistake, taking into consideration all the facts, was that a reasonable mistake? And that's where I think this verdict is in perfect harmony, and I don't find it inconsistent at all, and I urge your honors that a jury consider all the facts. This was a jury that asked many questions. They didn't ask a single question on the special interrogatories or the verdict sheet, with the exception of did they have to be unanimous on the special interrogatories and did they have to answer them all. But they understood the special interrogatories, they understood the court's charge, and they understood question two and three. But you did agree that questions one and two were the two verdict issues that the jury has to address. Was that you or was that Curley's? That's correct. I think question one was regarding the observations into the Camry. Question two was the objective. Right. And you did agree that those were the two verdict issues. No. Well, I mean, it's in the transcript. The verdict questions are what's shown on the... I could disagree with a word or two, but I think it is the two verdict issues that the jury has to address. Was that you speaking or... No. The verdict issues, your honor, are what was agreed on the verdict sheet. You can't take one out of context. Right. No, but I'm just saying, isn't this your language? I could disagree with a word or two, but I think it is the two verdict issues that the jury has to address. If I said that, the verdict sheet is the verdict sheet. Are you admitting, I mean, you're agreeing you said that? Your honor, you have the transcript in front of you if that's what I said. But the verdict sheet is what the jury had in front of it. That's the key. They had questions one, two, and three. Those are the components of the verdict. Those are the components of what this jury had to determine. And they ruled in favor of Trooper Clem on questions two and three. Mr. Cadys, thank you for your argument. Thank you very much. Mr. Gould. And Mr. Gould, you went substantially over your time. So when that light goes on, your time is up. I'm trying to go faster on it. You need to go faster. Well, you go pretty fast. First of all, we don't have to argue what a police officer would have done had he known. All he's telling you now that Clem still should have had his gun out is made up now. It's not from the trial. Answer me about question three. All right. Isn't question three a legitimate question of fact submitted to the jury in which they found and they made a finding? That was our exact objection to it is that I ask you to please read analysis of the verdict sheet again because we cited to 40 places in the record. He didn't cite to one place in the record. You cited that it was an impermissible question of law. That's right. But is it a question of law or a question of fact? What we said, as you'll read, is you're giving them a question of fact under the guise of it being a question of law. Well, but it was a question of fact. No, but it was one and two were the objective reasonableness questions. Just answer my question. Was it a question of fact or a question of law? It was an impermissible question of fact which would confuse the jury. Why was it impermissible? Because one and two were the two liability questions, which, if you look at the record on page T16 and 17, where I explained if we win either of these, we win the case, and that's what was accepted without objection. If, in fact, Mr. Katish just admitted to question three, the jury would read as applying only to question two, and that's one of the things we said. They're going to say the shooting was objectively reasonable if they find third-line question two, which Mr. Katish said was the constitutional question. But if that was true, then that would have been a debt-and-out question, and the verdict sheet clearly says proceed if you find for the plaintiff on question one or two, which is the classic language for two theories of liability. Two wasn't the constitutional question. The constitutional question was one or two, either one we had to win, and all the jury said was, assuming you didn't see the guy, putting that aside, on the confrontation, the shooting was objectively reasonable, and that's exactly what we said question three would answer. It would not answer question one, that if we won question one, we won the case. You'd have to say the jury was being irrational to say he should have seen Mr. Gould. I'm trying to slow you down. You just told him to talk fast. I didn't tell him to talk fast. I told him to talk in five minutes. Mr. Gould, that was my interpretation. What are you asking for here? We are asking to enforce the verdict that the jury came in. We won every contested issue of fact outlining curly one. We fulfilled curly one's mandate that if he had seen the body in the car, any subsequent shooting would have been clearly unreasonable, regardless of what happened. And we won the theory of liability. In every other published case in the history of the world, you win a theory of liability, and the interrogators, you win the case. She only entered verdict for them because she put a question three on, which she admitted she put on. Do you want us to rule in your favor or send this back for another trial? We feel that this should be ruled in our favor. Even if question three was legitimate, the facts found in question one would control that he should have seen the body. Clem on page 1016 himself says, had I seen the body, I wouldn't have thereafter shot the person. That's what you need to know. That was uncontested. Had I seen the body, there would have been no shooting. Let me ask a question, Mr. Kuhl. Are you saying that as a matter of constitutional law, a police officer who, well, let me rephrase that, that it is constitutionally impermissible for the court to consider the sequence of events that occur after Officer Clem doesn't look in the car, and indeed it's impermissible to consider the sequence of events leading up to the point where he looks in the car? Answer that in two parts. Do we have to stop at not looking in the car? Yes, the jury was told and did consider everything leading up to the car, and as to the second thing, it would have been no different than if he had gotten a call on his car radio saying, we caught the perp, go home, but he didn't hear it because he had his iPod on. He got out of the car and saw a guy with a gun and shot him. There are often, even in the case, Abraham v. Russell says it, there can be one event that is outcome determinative, and here's the event that, as Curley 1 identified, would be outcome determinative, which is why they made up a sentence. I'm saying it's constitutionally impermissible to take into account the toll taker motioning, the view of somebody holding a gun. That should not enter into analysis here at all because not looking in the car ends the analysis. I'm saying when the facts are uncontradicted that Clem himself said, if I had seen the body, I wouldn't have shot him. The defendant's brief, respondent's brief said, had he seen the body, there should have been a directed verdict for Curley. Thank you, Mr. Gold. I'm taking that as it is. Thank you very much. Sorry I went so fast. Thank you. We thank counsel. It's obviously been a case that's been around here a long time. We understand the passions, and we thank you for your helpful insight into the case, and we will take the case under advisement. Thank you.